Manchester District Court
No. 6383

STATE OF NEW HAMPSHIRE v. BARBARA L. BURROUGHS

January 31, 1973

*Warren B. Rudman,* attorney general, and *Robert V. Johnson II,* assistant attorney general (*Mr. Johnson* orally), for the State.

*William D. Tribble* and *Aaron A. Lipsky* (*Mr. Lipsky* orally) for the defendant.

LAMPRON, J. The sole question to be decided is whether a court may suspend any portion of the penalties prescribed by RSA 262-A:62 (Supp. 1972) upon a second conviction of operating a motor vehicle while under the influence of intoxicating liquors. This statute prescribes that the operator "shall be imprisoned for not less than ten days nor more than six months . . . and fined not less than five hundred nor more than one thousand dollars". On January 19, 1972, the defendant pleaded guilty to such operation and because of a prior conviction became subject to the above penalties. The Presiding Justice (*Capistran,* J.) reserved and transferred the above question before passing sentence.

"From the earliest times in this State as a matter of practice and precedent it has been assumed that courts had the power to suspend either the imposition or the execution of a criminal sentence. Page, Judicial Beginnings in New Hampshire, 1640-1700, at page 114 (1959)". *State v. Valrand,* 103 N.H. 518, 519-20, 176 A.2d 189, 191 (1961). That judicial power has been consistently sustained in this State and in other jurisdictions. *State v. Valrand supra; Couture v. Brown,* 82 N.H. 459, 135 A. 530 (1926); *Com. ex rel. McGinnis v. Ashe,* 330 Pa. 289, 291, 199 A. 185, 186 (1938); *Ouletta v. State,* 246 Ark. 1130, 1133, 442 S.W.2d 216, 217 (1969); 24 C.J.S. *Criminal Law* § 1618 (1), at 869-70 (1961); *see State v. Berge,* 109 N.H. 570, 258 A.2d 489 (1969).

The basis for the inherent power of a court to suspend part or all of a sentence, usually in favor of probation or some other form of supervision or restraint short of total confinement, was well stated as far back as 1916 in the case of *Ex Parte United States,* 242 U.S. 27, 38, 61 L. Ed. 129, 139, 37 S. Ct. 72, 73 (1916). "'Modern notions respecting the treatment of law breakers abandon the theory that the imposition of the sentence is solely to punish, and now the best thought considers three elements properly to enter into the treatment of every criminal case after conviction. Punishment in some measure is still the object of sentence, but affecting its extent and character we consider the effect of

the situation upon the individual as tending to reform him from or to confirm him in a criminal career, and also the relation his case bears to the community in the effect of the disposition of it upon others of criminal tendencies.'"

Similar considerations motivated the recommendations against mandatory sentences made in a recent project of the American Bar Association on standards for criminal justice. A.B.A. Standards Relating to Sentencing Alternatives § 2.1(e) at 55, 56; §§ 3.2, 3.3 (Approved Draft 1968). In our form of government the trial judge is best qualified to make the evaluations necessary to determine what punishment would most likely achieve the above objectives in the case of a particular individual. *State v. Douglas,* 87 Ariz. 182, 188, 349 P.2d 622, 625 (1960). In discharging this heavy responsibility, the sentencing judge is aided by presentence investigation reports and recommendations made by other governmental and social agencies as well as by counsel for the State and for the defendant. RSA 504:15; RSA 651:4 (Supp. 1972); RSA 491: App. R. 99 (Supp. 1972).

The legislature has demonstrated in many instances its accord with the principle of judicial discretion in the sentencing of those found guilty of crime. RSA 504:1 provides that "[a]ny court shall have power to suspend imposition or execution of sentence, or any part thereof, and to place the defendant on probation for a period not to exceed five years." "When, in case of a misdemeanor, execution of a sentence to the house of correction is suspended or the case is otherwise filed" a mittimus for service of the sentence may be issued within a stated time. RSA 607:12. Under RSA 607:14-a (Supp. 1972) a person committed to an institution other than the State prison may be released by the sentencing court to enable him to work or because it is conducive to his rehabilitation.

In 1967 the legislature authorized the creation of a commission "to revise, codify and amend" the criminal laws of New Hampshire. Laws 1967, ch. 451. Following the commission report in 1969, the legislature in 1971 adopted a new criminal code to become effective November 1, 1973. Laws 1971, ch. 518. It provides that "a person convicted of a felony or misdemeanor may be sentenced to imprisonment, probation, conditional or unconditional discharge, or a fine". RSA 651:2

(Supp. 1972). It also provides: "Notwithstanding any other provision of law, the sentence to imprisonment of any person may be suspended, at the time of sentence or at any time while any part thereof remains". RSA 651:20 (Supp. 1972). These enactments demonstrate a continuing intent by the legislature to provide the sentencing judge with options to adapt his sentence to a particular individual in the manner best suited to accomplish the constitutional objectives of punishment, rehabilitation and deterrence. New Hampshire constitution part I, article 18, provides as follows: "All penalties ought to be proportioned to the nature of the offense. No wise legislature will affix the same punishment to the crimes of theft, forgery, and the like, which they do to those of murder and treason. Where the same undistinguishing severity is exerted against all offenses, the people are led to forget the real distinction in the crimes themselves, and to commit the most flagrant with as little compunction as they do the lightest offenses. For the same reason a multitude of sanguinary laws is both impolitic and unjust. The true design of all punishments being to reform, not to exterminate mankind".

On rare occasions, however, the legislature sought to provide for the imposition of a mandatory sentence. In such instances it has made this purpose unmistakably clear by explicity providing in the statute that the sentence imposed "shall not be suspended, but shall be enforced by the court without indulgence or delay" or by some similar language. Laws 1917, 147:26; *Couture v. Brown,* 82 N.H. 459, 461, 135 A. 530, 531 (1926). The same procedure of stating specifically that the sentence imposed may not be suspended has been followed in more recent legislation. Laws 1963, 276:1 (RSA 318-A:21) now repealed in that regard; Laws 1970, 48:3 (RSA 318-B:26). *See also* Laws 1967, 281:1 (RSA 262:27-b) similarly repealed; Laws 1969, 107:1.

Laws 1971, 269:1, involved in this case, amended the penalty in RSA 262-A:62 (Supp. 1972) for a second conviction of driving under the influence of intoxicating liquor to read as follows: "[H]e shall be imprisoned for not less than ten days nor more than six months which may be intermittent or weekend days, and fined not less than five hundred nor

more than one thousand dollars". The State maintains this imposes a mandatory penalty which cannot be suspended by the sentencing judge.

The intention of the legislature is to be determined from the language of the statute as a whole and not from the use of a particular word or phrase. *Plymouth School Dist. v. State Bd. of Educ.,* 112 N.H. 74, 77, 289 A.2d 73, 75 (1972). The use of the word "may" in regard to the penalty for a first offense and "shall" for a second conviction is not controlling. *See Newcastle v. Rand,* 102 N.H. 16, 20, 148 A.2d 658, 661 (1959). The legislative history surrounding the passage of this amendment is at best equivocal. 1 N.H.S. Jour. 554-73 (Jan. 1, 1971 — Sept. 28, 1971). It is significant, however, that reference was made to Laws 1967, 281:1 (pp. 565-66) which provided for a two-day mandatory sentence for driving after revocation of license. This statute, which provided that such sentence "may not be suspended," indicates that the legislators were well aware of the proper language to be used when a mandatory sentence was intended. An examination of the penalties imposed for the punishment of most crimes will reveal that the word "shall" is used almost exclusively. No contention is made, or could reasonably be made, that all these sentences are intended to be mandatory.

We hold that the language used in this amendment does not require a mandatory sentence. We do not interpret it as intended to prevent the courts from exercising their well-established discretionary authority to suspend the imposition or execution of the sentence if the interests of justice so require.

The answer to the transferred question is "Yes" the court may suspend any portion of the sentence prescribed by RSA 262-A:62 (Supp. 1972) for a second conviction of driving under the influence of intoxicating liquor.

*Remanded.*

All concurred.